IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:14-CV-236-WKW |
| | ) | [WO] |
| THE CITY OF GENEVA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"Let there be no noise made, my gentle friends; Unless some dull and favourable hand.  Will whisper music to my weary spirit."[1]  This lawsuit is about the havoc that a "few seconds"[2] of loud music from a car stereo system wreaked for Plaintiff Tammy Waters and her minor son when their neighbor, an off-duty police officer, called his department to lodge a noise complaint against Plaintiff.  Had no noise been made at all – or only a whisper of music – on November 21, 2013, in a neighborhood in the small town of Geneva, Alabama, things no doubt would have played out differently.  But the events on November 21 have brought the parties here to federal court on a lawsuit replete with numerous causes of action

---

[1] William Shakespeare, The Second Part of King Henry IV act 4, sc. 5.

[2] (Compl. ¶ 13.)

under 42 U.S.C. § 1983 and state law arising from that night and Plaintiff's subsequent failed attempt to file a criminal complaint against the officer.

Before the court is a Motion to Dismiss (Doc. # 15), filed by Defendants City of Geneva and Magistrate Stephanie Smith.[3]  Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, with their grounds fully briefed in a memorandum.   (Doc. # 16.) Plaintiff, individually and as next of kin of her minor son, N.C., filed a response in opposition (Doc. # 19), to which Defendants filed a reply brief (Doc. # 24).   After careful consideration of the arguments of counsel, the appropriate law, and the allegations set forth in the Complaint, the court finds that the Motion to Dismiss is due to be granted.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Personal jurisdiction and venue are uncontested.

## II.  STANDARDS OF REVIEW

**A.**   **Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).   On a Rule

---

[3] The off-duty officer, Michael Hughes, also is a defendant, but the action against him is stayed for the time being, and, thus, the claims against him are not presently before the court.

2

12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs a standard that is similar to that one governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

**B.    Rule 12(b)(6)**

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.  BACKGROUND

The facts essential to resolution of the motion to dismiss, construed in Plaintiff's favor, are as follows.[4] On November 21, 2013, Plaintiff's son, N.C., and

---

[4] Because the allegations of the Complaint are taken as true at this stage of the litigation, these facts may not be the "actual facts." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

his friend were in the driveway of Plaintiff's home in Geneva installing a stereo system in N.C.'s truck.  When N.C. connected the speakers to the stereo system, the "stereo blared for a few seconds" until he "could get to the stereo and turn it off."  (Compl. ¶ 13.)

Unbeknownst to Plaintiff, who was at home in the yard at the time, Plaintiff's neighbor, Geneva Police Officer Michael Hughes, who was off-duty, called the Geneva Police Department and complained about the blast of loud music.  Geneva Police Officers, identified in the Complaint only as Fink and Mock, responded to Plaintiff's home in response to Officer Hughes's complaint. The officers informed Plaintiff that a neighbor had complained about the loud music.  Plaintiff explained to the officers that her son had been "making sure his stereo worked for a few seconds," but then had "turned it off."  (Compl. ¶ 14.) Plaintiff asked the officers, "What kind of idiot calls the police when the stereo was only on for a few seconds?"  (Compl. ¶ 22.) The officers left Plaintiff's residence and promptly relayed Plaintiff's comment to Officer Hughes.

A "short time later," Officer Hughes went to Plaintiff's home and confronted Plaintiff in the yard. Officer Hughes, who was "loud and angry" (Compl. ¶ 16), identified himself as a Geneva police officer, and reported that he was the one who had lodged the noise complaint.  He then threatened to arrest Plaintiff or issue her a citation. Plaintiff asked Officer Hughes to leave numerous times, but he refused

and continued to yell that he could "arrest" her.  (Compl. ¶ 17.)  At one point, Plaintiff pointed her finger at Officer Hughes.  In response to Plaintiff's finger-pointing, Officer Hughes grabbed Plaintiff and threw her into N.C.'s truck some five feet away.  When Plaintiff got up and tried to "defend[ ] herself," Officer Hughes "grabbed [her] again and began hitting her violently on the arms." (Compl. ¶ 17.)

Armed with a sugar cane stick, Plaintiff's son attempted to intervene in the altercation.  Officer Hughes threatened to shoot N.C., and N.C. threatened to "beat the hell" out of Officer Hughes if he did not release Plaintiff.  (Compl. ¶ 17.)  At that time, the on-duty officers, Fink and Mock, returned to Plaintiff's residence and persuaded Officer Hughes to leave.

Sometime "after the incident," Plaintiff tried to file a criminal complaint against Officer Hughes with Defendant Stephanie Smith, the City of Geneva's magistrate.  (Compl. ¶ 18.)  Magistrate Smith refused to accept Plaintiff's criminal complaint, stating that Plaintiff first had to "clear[ ] it" with the city prosecutor. (Compl. ¶ 18.)  Eventually, several months later in March 2014, Plaintiff was informed that she could file a criminal complaint against Officer Hughes with the magistrate of the City of Hartford.[5]

---

[5] The Complaint does not indicate whether Plaintiff pursued this option or whether the magistrate of the City of Hartford accepted the criminal complaint for filing.

On April 2, 2014, Plaintiff commenced this lawsuit against the City of Geneva, Officer Hughes, and Magistrate Smith.  The Complaint embodies thirteen counts.  Five counts – Counts I, II, III, VIII, and IX – are brought pursuant to 42 U.S.C. § 1983, alleging both municipal and individual liability for violations of the First Amendment (Count I), the Eighth Amendment (Count II), the Fourteenth Amendment's Due Process and Equal Protection Clauses (Count III, VIII, and IX). Eight counts – Counts IV, V, VI, VII, X, XI, XII, and XIII – assert state-law claims for assault, battery, intentional infliction of emotional distress/outrage, abuse of process, wanton supervision and retention of Officer Hughes, invasion of privacy, and negligent training and supervision of Officer Hughes.

The Complaint names Magistrate Smith and Officer Hughes in their individual and official capacities.   The City is named in all thirteen counts. Magistrate Smith is named in Counts II, VII, and IX, and Officer Hughes is named in Counts I, II, IV, V, VI, XI, and XII.  The Complaint requests compensatory damages, punitive damages, and injunctive relief aimed at preventing officer violence towards the City's citizens, as well as costs and attorney's fees.

The City and Magistrate Smith responded to the Complaint with a motion to dismiss.  In lieu of an answer, Officer Hughes filed a motion to stay the action against him pending resolution of charges against him in the City of Geneva for harassment of Plaintiff.  An Order was entered granting Officer Hughes's motion

to stay as to Plaintiff's action against him, but denying the motion as to Plaintiff's action against the City and Magistrate Smith.

## IV.  DISCUSSION

The City and Magistrate Smith move to dismiss all claims against them with prejudice for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Defendants raise numerous arguments, including lack of Article III standing, judicial immunity under federal and state law, municipal immunity under state law, and failure to plead a plausible claim for relief.  Plaintiff's response is unresponsive to the majority of the argument raised by the City.

## A.    **<u>Preliminary Matters</u>**[6]

At the outset, there are three pleading matters that require only short discussion for resolution.  These matters relate to the official-capacity claims against Magistrate Smith, the fictitious-party claims, and the claims that request punitive damages awards against the City.  Defendants present arguments and authority as to why Rule 12(b)(6) dismissal is appropriate as to these claims, and Plaintiff has not demonstrated the contrary.

---

[6] These preliminary matters invoke Rule 12(b)(6)'s standard of review.

1.    *Official-Capacity Claims*

Defendants argue that dismissal of the official-capacity claims against Magistrate Smith is appropriate because those claims are "redundant to the claims against the City." (Doc. # 16, at 25.)  Eleventh Circuit case law backs up this argument.

In *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991), the Eleventh Circuit explained why a suit against a municipal officer is redundant of a suit against the city for whom the municipal officer works:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).

*Id.* at 776 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal footnote omitted)).

The Complaint alleges that Magistrate Smith is an agent of the City and seeks relief from Magistrate Smith in her official capacity in Counts III, VII, and IX.  The Complaint also joins the City as a Defendant on the three counts brought against Magistrate Smith.  Based upon these allegations, the official-capacity claims against Magistrate Smith are the functional equivalent of the claims brought against the City.  Disposing of the official-capacity claims against Magistrate

Smith eliminates redundant claims, without changing the substance of what remains before the court.

Plaintiff urges the court to retain the official-capacity claims by referring to 18 U.S.C. § 242 (the criminal analogue to § 1983),[7] but the argument is not developed or persuasive.   Nor does the argument address or refute *Busby*'s pronouncements.

Accordingly, the official-capacity claims against Magistrate Smith are due to be dismissed.[8]

## 2.   *Fictitious-Party Pleading*

The Complaint attempts to join fictitious Defendants, identified as "A through H." (Compl. ¶ 6.)  Defendants move to dismiss "all fictitious party claims because such claims are not cognizable in federal court."  (Doc. # 16, at 26.)

"As a general matter, fictitious-party pleading is not permitted in federal court."  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)); *see also Adams v. Franklin*, 111 F. Supp. 2d 1255, 1259 n.3 (M.D. Ala. 2000) ("[F]ictitious party practice is not authorized by either the Federal Rules of Civil Procedure or

---

[7] The Complaint does not bring a claim under 18 U.S.C. § 242, and appropriately so.  *See Butler v. Morgan*, 562 F. App'x 832, 835 (11th Cir. 2014) (observing that § 242 is a criminal statute that "do[es] not provide a civil cause of action or any civil remedy").

[8] Defendants also argue for the dismissal of the official-capacity claims against Officer Hughes on the same grounds.  (Doc. # 16, at 25.)  Because the action presently is stayed against Officer Hughes, the claims against him are not addressed in this opinion.

any federal statute.").  Plaintiff does not argue that an exception to the general rule prohibiting fictitious-party pleading applies in this case.  Accordingly, based upon the authorities cited, the fictitious-party claims are not proper and are due to be dismissed.

### 3.   *Punitive Damages Awards Against the City*

All thirteen counts in the Complaint request punitive damages from the City for its alleged violations of federal and state law.  The City argues that a plaintiff cannot recover punitive damages from an Alabama municipality.  (Doc. # 16, at 26.)  The City is correct.

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the United States Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *Id.* at 271.  Moreover, § 6-11-26 of the Alabama Code provides, in pertinent part, that "[p]unitive damages may not be awarded against the State of Alabama or any county or *municipality* thereof . . . ."  Ala. Code § 6-11-26 (emphasis added).  Based upon these authorities, the City's motion to dismiss the federal- and state-law claims for punitive damages is due to be granted.

## B.   <u>Article III Standing (Counts III, VII, and IX)</u>

Defendants move to dismiss Counts III (§ 1983), VII (§ 1983), and IX (state law), arguing that Plaintiff has not alleged facts establishing that she has standing and that her lack of standing deprives the court of subject-matter jurisdiction over

these claims.   These three counts, which allege violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses and state law, are premised on the City's and Magistrate Smith's alleged liability for Magistrate Smith's refusal to permit Plaintiff access to the municipal court in order to file a criminal complaint against Officer Hughes.[9]   Defendants contend that Plaintiff "lacks a judicially cognizable interest in [Officer] Hughes's prosecution," and rely principally upon the Supreme Court's decisions in *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), and *Leeke v. Timmermann*, 454 U.S. 83 (1982).   (Doc. # 16, at 12–13.)   Plaintiff does not address Defendants' standing arguments.   For the reasons that follow, *Linda R.S.* and *Leeke* demonstrate that the Complaint's allegations are insufficient to show that Plaintiff has standing to bring Counts III, VII, and IX against the City and Magistrate Smith.

"[S]tanding is a threshold jurisdictional question that should be addressed prior to and independent of the merits of a party's claims."   *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).   It embodies three requirements. First, the plaintiff must have "suffered an 'injury in fact' – an invasion of a

---

[9] (*See* Compl. ¶ 19 (alleging that Magistrate Smith "informed . . . [Plaintiff] she could not file the complaint until she cleared it with the City Prosecutor/City Attorney, thereby denying [Plaintiff] access to the court"); ¶ 30 (alleging that Magistrate Smith violated Plaintiff's procedural and substantive due process rights and her right to equal protection by denying Plaintiff "access to the law and courts" and that the City is liable for failing to "properly train and supervise Smith" (Count III); ¶¶ 51, 54 (alleging that Ms. Smith "misused the legal process by not allowing [Plaintiff] to file a complaint against [Mr. Hughes] with the City of Geneva" and that the City "ratified her conduct" (Count VII); ¶¶ 69, 73 (same allegations as ¶¶ 51, 54 (Count IX).)

judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003).   Second, there must be a causal connection between the injury and the defendant's conduct. *Id.*  Third, it must "be likely, not merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden" of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (alteration omitted).

The test for standing is the same under Alabama law. *See Ex parte King*, 50 So. 3d 1056, 1059–60 (Ala. 2010) (adopting United States Supreme Court's test for standing).   The following standing analysis applies equally, therefore, to the federal- and state-law claims.

In *Linda R.S.*, the Supreme Court denied the plaintiff standing to sue a district attorney for his refusal to enforce a criminal statute against the father of her out-of-wedlock child for his failure to pay child support. *See* 410 U.S. at 615–16. The district attorney had refused prosecution based upon the state's belief that the statute applied only to parents of legitimate children, and the plaintiff alleged that this refusal violated the Fourteenth Amendment's Equal Protection Clause. The Court disagreed, holding that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619. Although the Court recognized that the plaintiff had "an interest in the support of her child," it concluded that, "given the special status of criminal prosecutions in our system, . . . [the plaintiff] ha[d] made an insufficient showing of a direct nexus between the vindication of her interest and the enforcement of the State's criminal laws." *Id.* The Court continued that, even if the plaintiff were granted the relief she requested (*i.e.*, an injunction forbidding the district attorney from declining to prosecute), that relief would not guarantee the father's payment of child support; it would only guarantee an increased likelihood that the father would endure prosecution and end up in jail. "The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only

speculative." *Id.* at 618.  The Supreme Court concluded, therefore, that the district court correctly dismissed the suit for "want of standing." *Id.* at 620.

*Linda R.S.* provides guidance with respect to Article III standing's injury-in-fact requirement where the plaintiff urges the prosecution of a third party.  It also expresses an early articulation of the causation and redressability requirements of standing.  *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 79 n.24 (1978) (noting that the denial of standing to the plaintiff in *Linda R.S.* turned on "the unlikelihood that the relief requested would redress appellant's claimed injury"); *see also* 13A Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 3531.5, at 296 (3d ed. 2008) ("The current story of causation as an element of standing begins with *Linda R.S. v. Richard D.*").  *Linda R.S.* explained the lack of a causal nexus between the plaintiff's injury (described as the plaintiff's failure to obtain child support payments from the father of her child) and the defendant's conduct (the refusal of the district attorney to prosecute the father):  The plaintiff "made no showing that her failure to secure support payments results from the nonenforcement, as to her child's father, of [the criminal statute]." *Linda R.S.*, 410 U.S. at 618.  That decision also spoke on the issue of redressability, concluding that it was "only speculative" whether prosecution and jailing of the father actually would result in the father's payment of child support.  *Id.*

Nine years after the decision in *Linda R.S.*, the Supreme Court in *Leeke v. Timmermann*, 454 U.S. 83 (1982), relied upon *Linda R.S.* to hold that state inmates lacked standing to bring a 42 U.S.C. §§ 1983 and 1985(3) lawsuit alleging a conspiracy among state correctional officers "to block the issuance of the arrest warrants for the prosecution of the prison guards" for their role in the alleged beating of inmates during a prison uprising. *Id.* at 84. The Court ruled that there was a "questionable nexus" between the inmates' "injury – the alleged beatings – and the actions of the state officials." *Id.* at 70. It reasoned that there was "no guarantee" that, first, the issuance of a warrant would lead to a prosecution and, second, that the "issuance of the arrest warrant would remedy claimed past misconduct of guards or prevent future misconduct." *Id.*

Moreover, although one leading treatise has labeled *Linda R.S.* as "not convincing" for its "mingled concept of causation and remedial benefit," 13A Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 3531.5, at 297–98 (3d ed. 2008), lower federal courts have, on the basis of *Linda R.S*, "generally declined to recognize standing on the part of victims of crimes to bring a § 1983 action based upon lack of prosecution of others." *Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) (collecting cases); *see also Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009) ("The lower federal courts have maintained the distinction in standing between those prosecuted by the state and those who would

15

urge the prosecution of others, even when the failure to prosecute was allegedly discriminatory." (collecting cases)).   Furthermore, following *Linda R.S.*'s lead, lower federal courts have concluded that, "[w]here the injuries allegedly sustained by plaintiff as a result of the alleged criminal acts of another would not have been redressed even if the offender had been prosecuted or if the police investigation had been more thorough, plaintiff lacks standing under § 1983." *Fulson*, 801 F. Supp. at 6.  And the Eleventh Circuit has applied *Linda R.S.*'s rule "not only to prosecutors, but [to] those acting in a 'prosecutorial capacity.'" *Garcia v. Miami Beach Police Dep't*, 336 F. App'x 858, 859 (11th Cir. 2009) (quoting *Smith v. Shook*, 237 F.3d 1322, 1324 (11th Cir. 2001)).

Application of *Linda R.S.* and *Leeke* lead to the conclusion that Plaintiff cannot demonstrate the causation and redressability elements of standing.[10] Beginning with causation, *Linda R.S.* and *Leeke* would define Plaintiff's injury as the physical beating and emotional trauma she endured from Officer Hughes on November 13, 2013.  *Compare Linda R.S.*, 410 U.S. at 618 (observing that the plaintiff "no doubt suffered an injury stemming from the failure of her child's father to contribute support payments."), *with* Leeke, 454 U.S. at 86 (defining the plaintiffs' injuries as "the alleged beatings").  Under this definition of the injury,

---

[10] Although causation and redressability are separate and distinct elements of standing, they tend to "overlap as two sides of a causation coin." *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997). Indeed, there is overlap in the standing discussions in *Linda R.S.* and *Leeke*.  To the extent these two standing elements converge on the facts of this case, the court has attempted to keep the analyses separate.

the facts, construed in Plaintiff's favor, reveal that the requisite causal connection is lacking between the injury and Magistrate Smith's conduct, *i.e.*, her refusal to accept Plaintiff's criminal complaint for filing without approval by the City prosecutor. Even if Magistrate Smith had accepted the criminal complaint for filing, there are no allegations suggesting that the filing of the criminal complaint would have resulted in the issuance of a warrant based upon a finding of probable cause. *See* Ala. Code § 15-7-3 ("If the judge or magistrate is reasonably satisfied from such deposition [*i.e.*, a complaint on oath] that the offense complained of has been committed and that there is reasonable ground to believe that the defendant is guilty thereof, he must issue a warrant of arrest."). More importantly, though, even if Magistrate Smith had issued an arrest warrant, which Plaintiff implies is the desired result, the Complaint alleges no facts and Plaintiff cites no authority demonstrating that the issuance of a warrant in this case actually would lead to or require the criminal prosecution of Officer Hughes by the city prosecutor.[11] The allegations fall short of satisfying the causation requirement of standing.

---

[11] As noted in *Leeke*, those jurisdictions that have provisions for private citizens to initiate a criminal prosecution "have required or encouraged input of the prosecuting attorney before issuance of an arrest warrant." 454 U.S. at 87 n.3; *see also id.* (citing the American Bar Association Standards for Criminal Justice for its statement that, "where the law permits a private citizen to complain directly to a judicial officer, the complainant 'should be required to present the complaint for prior approval to the prosecutor, and the prosecutor's actions or recommendation thereon should be communicated to the judicial officer or grand jury.'"). Plaintiff cites no authority under Alabama law that permits her, as a private citizen, to commence a criminal prosecution. *Cf.* Ala. Code § 15-23-66 ("The rights of the victim do not include the authority to direct the prosecution of the case.").

Turning to the redressability prong of Article III standing, as in *Leeke*, there also is no assurance that the issuance of an arrest warrant against Officer Hughes or even his criminal prosecution would remedy Officer Hughes's prior alleged misconduct against Plaintiff or prevent Plaintiff from suffering similar harm in the future.  The likelihood that Plaintiff's injury – a physical assault and emotional trauma – would be redressed through the issuance of warrant and a prosecution against Officer Hughes "can, at best, be termed only speculative."  *Linda R.S.*, 410 U.S. at 618.

There is an additional pleading deficiency that precludes a finding of redressability.  The redressability prong of standing presumes a favorable decision on the merits and that the requested relief will be granted.  And a plaintiff "must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  Hence, each form of requested relief must be likely to redress the injury.  The foregoing discussion assumes that the requested relief is an injunction, either affirmative or negative, against Magistrate Smith concerning the performance of her duties with respect to the receipt or perhaps review of a criminal complaint against a police officer from a private citizen.  *Cf. Linda R.S.*, 410 U.S. at 618 (seeking "an injunction running against the district attorney forbidding him from declining prosecution on the ground that the unsupported child is illegitimate").  But the

Complaint seeks no equitable relief from Magistrate Smith or from the City with respect to its supervision and training of her.[12]   The Complaint's request for injunctive relief focuses solely on remedying officer assaults against citizens and seeks only monetary damages from Magistrate Smith.   And, even if it is assumed that monetary damages are available against Magistrate Smith, the likelihood that *Magistrate Smith*'s payment of money to Plaintiff would remedy *Officer Hughes*'s alleged prior misconduct or deter him from engaging in future misconduct is that much more remote and speculative.   Plaintiff has not satisfied the redressability requirement of Article III standing.[13]

---

[12] This opinion expresses no opinion on what type of injunctive relief, if any, would be appropriate.

[13] Some mention of Article III's injury-in-fact requirement is appropriate.   Although Plaintiff's brief does not address the injury-in-fact requirement of Article III standing, it emphasizes – consonant with the Complaint's allegations, *see supra* note 9 – that Plaintiff's claims in Counts III, VII, and IX are predicated on Magistrate Smith's denial of Plaintiff's "access to the court."   (Doc. # 19, at 6.)   The suggestion is that Plaintiff has been injured by the inability to access the municipal court to file a criminal complaint against Officer Hughes, without having to obtain prior approval from the city prosecutor.   Plaintiff provides no argument or authority that demonstrates that this re-characterization of her injury, assuming it is viable, would fare better.   Under *Leeke*, which Plaintiff has not attempted to distinguish, the filing of a criminal complaint under the best-case scenario might lead to "the issuance of an arrest warrant," but an executed arrest warrant would "simply [be] a prelude to actual prosecution" against Officer Hughes and not a guarantee of prosecution.   *Leeke*, 454 U.S. at 86.   This brings the discussion back to the principle enunciated in *Linda R.S.* that Plaintiff, who is a private citizen, "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."   *Linda R.S.*, 410 U.S. at 619; *see also McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles*, 438 F. App'x 754, 757 (11th Cir. 2001) ("Because only [the prosecutor] could have brought charges, the [plaintiffs] did not have a right of access to the courts to bring criminal charges and they suffered no legal injury as a result of [the prosecutor's] actions" required to establish standing to pursue their § 1983 claim; *see also Carr v. Reed*, 316 F. App'x 588, 589 (9th Cir. 2009) ("The district court properly determined that [the plaintiff] lacked standing to challenge the Commission on Judicial Conduct's alleged failure to consider his complaints against judges and justices of the State of Washington because "a private citizen lacks a judicially cognizable

In sum, Plaintiff fails to demonstrate the causation and redressability elements of Article III standing, as any injury is not traceable to Magistrate Smith's failure to accept the criminal complaint for filing and a favorable decision will not redress the asserted injury.   Accordingly, Plaintiff lacks standing to bring Counts III, VII, and IX against the City and Magistrate Smith, and Defendants' motion to dismiss Counts III, VII, and IX for lack of standing is due to be granted.[14]

## C.   Federal Claims:  Failure to State a Claim (Counts I, II, VIII, & IX)

Counts I, II, VIII, and IX plead claims against the City based upon theories of ratification, failure to train, and failure to supervise.  Defendants argue that the allegations are insufficient to plead any of these theories with the facial plausibility required by *Iqbal*/*Twombly*.

---

interest in the prosecution or nonprosecution of another." (quoting *Linda R.S.*, 410 U.S. at 619). As one court has observed, this principle holds true "even where the person seeking the prosecution was the victim of a criminal offense committed by the other."  *McWilliams v. McCormick*, No. 5:08cv88, 2008 WL 2810277, at *2 (E.D. Tex. July 21, 2008) (citing *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988)).  Based upon the foregoing authority, it is dubious that Plaintiff demonstrates an injury-in-fact to the extent that injury is steeped in her desire for Officer Hughes to be subject to criminal prosecution.

[14] Because Counts III, VII, and IX are due to be dismissed for lack of standing, it is unnecessary to address the affirmative defense of judicial immunity, which Defendants raise as an alternative basis for dismissal of these claims.  It also unnecessary to address the other Rule 12(b)(6) arguments, but it is noted that these claims potentially face other pleading pitfalls.  For example, with respect to the claim alleging procedural and substantive due process violations under the Fourteenth Amendment, the Supreme Court has held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.'" *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 768 (2005) (citation and internal quotation marks omitted).

1.      *Theories of Municipal Liability*

For § 1983 liability to lie against a municipality, the Complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010).  Generally, "to impose § 1983 liability on a municipality, a plaintiff must show:  (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom or policy "may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of [the city's] inhabitants.'" *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  When a failure to train is at issue, a plaintiff must show "'that the municipality knew of a need to train . . . in a particular area and the municipality made a deliberate choice not to take any action.'"  *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F. Supp. 2d 1276, 1292 (M.D. Ala. 2009), *reversed on other grounds*, 639 F.3d 1041 (11th Cir. 2011) (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).  This requirement is "intentionally onerous" to avoid permitting a municipality to suffer *respondeat superior* liability.  *Gold*, 151 F.3d at 1351 n.10.

Notice may be established in two ways. "First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293. Second, "deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious" ("obvious need test"). *Id.*

A § 1983 failure-to-supervise claim is closely akin to a § 1983 failure-to-train claim. A plaintiff may prove that a failure to supervise is a municipal policy or custom by demonstrating that the city's failure "evidenced a 'deliberate indifference' to the right of its inhabitants." *Gold*, 151 F.3d at 1350. Deliberate indifference requires a showing that "the municipality knew of a need to . . . supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

As discussed below, in limited circumstances, a city also may be held liable on a ratification theory. Support for ratification as a theory of § 1983 municipal liability emanates from dicta in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1998) (plurality opinion), that, "[i]f the authorized policy makers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127. The Eleventh Circuit has explained that § 1983 municipal liability on the basis of ratification occurs

"when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* (citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it*.'")).

## 2. *Count I (First Amendment) and Count II (Eighth Amendment) Against the City: Ratification Theory*

Counts I and II of the Complaint seek to hold the City liable based on allegations that the City ratified Officer Hughes's conduct. (*See* Compl. ¶ 24 (The City "ratified [Officer Hughes's] conduct" (Count I)); Compl. ¶ 28 (same) (Count II)).)[15] (Compl. ¶ 27.) Defendants challenge the sufficiency of the allegations supporting Counts I and II on multiple grounds, but the analysis need only rest on

---

[15] Count I alleges that Officer Hughes "intentionally harassed and physically assaulted the [Plaintiff] Mother and threatened to kill the Child, solely because the Mother exercised her right to free speech under the First Amendment." (Compl. ¶ 22.) The speech that allegedly led to Officer Hughes's retaliatory conduct was Plaintiff's statement: "What kind of idiot calls the police when the stereo was only on for a few seconds[?]" (Compl. ¶ 22.) Count II alleges that Officer Hughes's "action violated [Plaintiff's] rights under the Eighth Amendment to the United States Constitution, by utilizing cruel and unusual punishment." (Compl. ¶ 27.) The source of Plaintiff's constitutional right against excessive force is the Fourth Amendment, not the Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment.").

the absence of allegations demonstrating a theory of ratification for holding the City liable under § 1983.

The Complaint does not include any allegations that a final policymaker for the City was aware of the incident on the night of November 21, 2013. The only mention in the Complaint of other City police officers is to Fink and Mock, the officers who responded to Officer Hughes's noise complaint. There are no allegations from which it can be inferred, and no argument from Plaintiff, that Fink and Mock were final policymakers, or even officers superior to Officer Hughes. Moreover, there are no allegations that, after Plaintiff referred to the complainant as an "idiot," Officer Hughes requested and obtained approval from an authorized, municipal policymaker to grab, throw, and hit, and verbally abuse Plaintiff on November 21, 2013. The Complaint does not allege that a City employee with final decision-making authority even knew about the events that culminated in Officer Hughes's alleged misconduct. The Complaint's attempt to hold the City liable for the § 1983 constitutional violations in Counts I and II is solely based upon a conclusory allegation that the "City ratified [Officer Hughes's] conduct." (Compl. ¶¶ 27–28.) Legal conclusions that are devoid of factual support do not satisfy Rule 12(b)(6)'s facial plausibility standard. *See Iqbal*, 556 U.S. at 678 (explaining that one of *Twombly*'s "working principles" is that "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (citing *Twombly*, 550 U.S. at 555)).

In sum, there are no plausible allegations indicating that the City is liable under § 1983 based upon a ratification theory. The § 1983 municipal liability claims in Counts I and II fail, therefore, and are due to be dismissed.

**3.     *Count VIII (§ 1983 Failure to Train and Supervise Officer Hughes) and Count IX (§ 1983 Failure to Train and Supervise Magistrate Smith)***

Counts VIII and IX allege § 1983 municipal liability claims against the City under the Fourteenth Amendment's Equal Protection Clause based upon the City's allegedly deficient training and supervision of Officer Hughes and Magistrate Smith.[16]  Defendants contend that the Complaint falls short of pleading plausible allegations of an underlying equal protection violation or of a custom or policy sufficient to support § 1983 municipal liability.  *See McDowell*, 392 F.3d at 1289 (setting forth the elements for imposing § 1983 liability on a municipality). Defendants' arguments are unrebutted by Plaintiff.

As to the municipal-liability requirement of an underlying constitutional violation, "[e]qual protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." *Corey Airport Servs.,*

---

[16] The court already has found that Plaintiff lacks standing to bring Count IX.  This section provides alternative grounds for dismissal of that count.

*Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). "Defining an 'identifiable group' that has been discriminated against is critical to establishing a claim under the Equal Protection Clause." *Id.* at 1296–97. For example, "groups based on race, sex, or even longer-term and discrete political affiliation . . . all potentially allow courts to identify clearly the parties involved, separate the parties into strongly defined groupings, and discern the existence of an identifiable group whose members may have suffered discrimination." *Id.* at 1297–98.

There are at least four reasons why Counts VIII and IX do not plead factual allegations that plausibly demonstrate that Officer Hughes or Magistrate Smith violated a right protected by the Equal Protection Clause. First, the Complaint does not indicate the discrete and identifiable group to which Plaintiff contends she and her son belong, and none can be ascertained either from the allegations or the briefing. The Complaint alleges that, on November 21, 2013, Plaintiff and her son suffered violence – physical and verbal – at the hands of Officer Hughes and that, subsequently, Magistrate Smith refused to permit Plaintiff to file a criminal complaint against Officer Hughes in the City of Geneva municipal court. (*See* Compl. ¶¶ 58, 61, 70.) Eleventh Circuit authority is clear, however, that a class comprising the victims of the offending conduct is insufficient to establish class-based discrimination: "[T]he class for a class-based claim for equal protection

26

purposes cannot be defined solely as those persons who suffered at the hands of the supposed discriminator." *Corey Airport Servs.*, 682 F.3d at 1298.

Second, it necessarily follows that, absent allegations defining the identifiable group, the Complaint does not establish that either Officer Hughes or Magistrate Smith targeted Plaintiff or her son on account of their membership in an identifiable group. Without allegations of a discrete and identifiable group to which Plaintiff and her son belong and against which Officer Hughes or Magistrate Smith discriminated, no valid, underlying equal protection claim exists. Moreover, in her response, Plaintiff does not offer any theory or point to any allegations that would support an equal protection violation.

Third, specific to Count XIII, paragraphs 61 and 63 of the Complaint premise the alleged equal protection violation on the "negligence" of the City; however, allegations of negligence are legally insufficient to sustain an equal protection violation. *See Rickett v. Jones*, 901 F.2d 1058, 1060 (11th Cir. 1990) ("Merely negligent conduct is insufficient to support a claim for denial of equal protection."). For this additional reason, Count XIII fails to state a claim upon which relief can be granted.

Fourth, specific to Count IX, Plaintiff also "fails to allege facts sufficient to support a reasonable inference of differential treatment." *Ford v. Strange*, ___ F. App'x ___, 2014 WL 4336952, at *8 (11th Cir. 2014). There are no allegations

identifying a similarly situated comparator who was permitted to file a criminal complaint against a police officer with Magistrate Smith, without having to first obtain the City prosecutor's approval. *See, e.g., Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1273 (11th Cir. 2004) ("[D]ifferent treatment of dissimilarly situated persons does not violate civil rights laws."). For this additional reason, Count IX fails to state a claim upon which relief can be granted.

Accordingly, a valid equal protection claim is not plausibly pleaded in Counts VIII and IX. Without an underlying equal protection violation, there can be no municipal liability under § 1983.

Even if the allegations in Counts VIII and IX stated an underlying equal protection claim, there are no allegations that attach liability to the City. First, the Complaint alleges only a single incident of alleged unconstitutional conduct by Officer Hughes and Magistrate Smith; it does not contain allegations, direct or inferential, that identify a policy or custom evidencing the City's failure to provide training or supervision in an area that caused Plaintiff or her son harm. Neither Count VIII nor Count IX contains a suggestion that the City knew about any deficiencies – much less constitutional deficiencies – in either Officer Hughes's or Magistrate Smith's job performance that required correction through training or supervision. The allegation in Count VIII that the City was "aware" of Officer Hughes's "propensity for violence," absent some factual elaboration, is conclusory

and insufficient to satisfy *Twombly*'s pleading threshold.   *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *cf. Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that an allegation that the defendants "knew or should have known" of a risk "merely recited an element of a [§ 1983] claim without providing the facts from which one could draw such a conclusion" and should have been disregarded for purposes of *Twombly*'s analysis.).   The allegation also is insufficient to demonstrate a ratification theory (*see* Compl. ¶ 66) because there are no allegations that a final policy maker knew of and approved Officer Hughes's use of violence on the night in question.

Second, the Complaint does not allege anything close to a "glaring omission" in the City's training program so as to establish the obvious need test. *Gold*, 151 F.3d at 1352.  As stated by the court in *Gilliam*, the lone example cited by the Supreme Court as constituting a glaring omission is a city's failure to train its officers in the use of deadly force.  *See* 667 F. Supp. 2d at 1292 (citing *City of Canton*, 489 U.S. at 390).   Hence, as this court has observed, "The Eleventh Circuit has repeatedly rejected attempts to extend failure-to-train liability [for single incidents] to other law-enforcement situations, such as the use of 'hobble' restraints, responding to complaints about the use of handcuffs, and the identification and treatment of mentally ill inmates by jail staff." *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010) (internal citations omitted).

Based on Eleventh Circuit authority, the facts of this case do not fit within the "narrow range of circumstances" in which "a plaintiff might succeed without showing a pattern of constitutional violations." *Gold*, 151 F.3d at 1352.

In sum, Counts VIII and IX do not plead a plausible claim of § 1983 municipal liability. This conclusion is reached after liberal construction of the Complaint with all well-pleaded facts accepted as true. Accordingly, Count VIII and IX are due to be dismissed for failure to state a claim upon which relief can be granted.

## C.   <u>State-Law Claims (Counts IV, V, VI, VII, X, XI, XII, and XIII)</u>

The Complaint also includes eight state-law claims that rely on the theory of *respondeat superior* to hold the City liable for Officer Hughes's and Magistrate Smith's alleged misconduct. Those claims are: (1) assault (Count IV); (2) battery (Count V); (3) intentional infliction of emotional distress (Count VI); (4) abuse of process (Count VII); (5) wanton supervision and retention of Mr. Hughes (Count X); (6) outrage (Count XI); (7) invasion of privacy (Count XII); and (8) negligence (Count XIII). Counts VI and XI are functional equivalents under Alabama law. *See Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) ("The intentional infliction of emotional distress is also known as the tort of outrage."). Defendants move to dismiss all of these claims against the City on state-law immunity grounds and for failure to plead plausible claims.

1.    *The Intentional Tort Claims Brought Against the City*

Seven of the eight state-law claims brought against the City allege intentional torts (*i.e.*, Counts IV, V, VI, VII, X, XI, and XII).  The City argues that it is immune from liability on these claims pursuant to § 11-47-190 of the Alabama Code.

Section 11-47-190 provides, in pertinent part, that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality . . . ."  Ala. Code § 11-47-190.  The upshot of § 11-47-190 is that "a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 742–43 (11th Cir. 2010).

All of the claims find support in allegations that Magistrate Smith and Officer Hughes engaged in intentional conduct, not negligent conduct.  Plaintiff makes no argument to the contrary.  Section 11-47-190 supplies, therefore, immunity to the City on Counts IV, V, VI, VII, X, XI, and XII, and dismissal of these claims is appropriate.[17]

---

[17] In light of this finding, it is unnecessary to address Defendants' other arguments for dismissal of these claims.

2.    *The Negligence Claim Brought Against the City*

Count XIII alleges that the City negligently failed to supervise and train Officer Hughes so as to prevent the physical and emotional trauma Plaintiff and her son suffered on November 21, 2013.  Citing *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995), the City contends that vicarious liability must attach to the negligence of "someone in [Officer] Hughes's chain of command, such as the police chief," and that a "direct negligence claim against the City" is not viable. (Doc. # 16, at 73.)  The City argues alternatively that, even if the Complaint had premised the City's liability on a supervisor's negligent supervision and training of Officer Hughes, the City still would not be liable because the cause of action does not exist under Alabama law.

Count XIII lacks a specific allegation that one of Officer Hughes's superiors negligently supervised and trained him, but the court need not decide the motion on that ground.   *See, e.g., McBride v. Houston Cnty. Health Care Auth.*, No. 12cv1047, 2013 WL 2948445, at *8 (M.D. Ala. June 7, 2013) (rejecting a strict reading of the complaint that limited the state-law vicarious liability claim to a direct liability claim against the city and finding "little purpose in dismissing the complaint over this minor ambiguity") (citing Fed. R. Civ. P. 8(d) and (e)).  The City's second ground will suffice as there is ample authority from federal district courts in Alabama that "a claim against a municipality for a supervisor's negligent

hiring or training is not cognizable under Alabama law."[18] *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1310 (S.D. Ala. 2011) (collecting cases); *see also Black v. City of Mobile*, 963 F. Supp. 2d 1288, 1308 (S.D. Ala. 2013) ("Pursuant to Ala. Code. § 11-47-190 and applicable Alabama case law, there can be no state law claim for negligent training or supervision against the City of Mobile."); *Borton*, 734 F. Supp. 2d at 1258 ("[N]o Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate."). Plaintiff has not offered any authority or presented a cogent argument as to how the facts in the Complaint could establish a claim against the City for its supervisory officer's negligent supervision and training of Officer Hughes. Accordingly, Count XIII is due to be dismissed for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

All claims against the City and Magistrate Smith are due to be dismissed pursuant to Rule 12(b)(1) and (6) on the grounds explained in this opinion. Accordingly, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 15) is GRANTED as follows:

---

[18] In a 2013 opinion, another judge of this court observed that "the Alabama Supreme Court recently recognized the potential for a negligent hiring, training, and supervision claim against the City of Montgomery itself." *Hughes v. City of Montgomery*, No. 12cv1007, 2013 WL 5945078, at *2 (M.D. Ala. Nov. 6, 2013) (citing *Ex parte City of Montgomery*, 99 So. 3d 282, 299 (Ala. 2012)). But, as *Hughes* pointed out, that potential claim would not arise where the city employee is a police officer, *id.*, and, thus, the viability of this potential claim does not require further probing here.

(1)   the 42 U.S.C. § 1983 official-capacity claims against Magistrate Smith, the fictitious-party claims, and the claims that request punitive damages from the City under both federal- and state-law are DISMISSED;

(2)   The § 1983 claims in Counts III, VII, and IX are DISMISSED pursuant to Rule 12(b)(1) for lack of Article III standing;

(3)   The § 1983 claims in Counts I, II, VIII and IX are DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted;

(4)    The state-law claims in Counts IV, V, VI, VII, X, XI, and XIII against the City are DISMISSED pursuant to § 11-47-190 of the Alabama Code; and

(5)    The state-law claim in Count IX against the City is DISMISSED for failure to state a claim upon which relief can be granted.

The Clerk of the Court is DIRECTED to terminate The City of Geneva and Magistrate Smith as Defendants.  This action proceeds with respect to Plaintiff's claims against Officer Hughes, which have been stayed.

DONE this 19th day of September, 2014.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE